**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOSEPH CLARK, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR VIOLATIONS OF** |
| ) | **THE FEDERAL SECURITIES LAWS** |
| LIVENT CORPORATION, PIERRE R. ) | |
| BRONDEAU, ROBERT C. PALLASH, G. ) | **JURY TRIAL DEMANDED** |
| PETER D'ALOIA, CHRISTINA LAMPE- ) | |
| ÖNNERUD, MICHAEL F. BARRY, ) | |
| STEVEN T. MERKT, PABLO MARCET, ) | |
| ANDREA E. UTECHT, and PAUL W. ) | |
| GRAVES, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Joseph Clark ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Livent Corporation ("Livent" or the "Company") and the members of Livent's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Livent with Allkem Limited ("Allkem") (the "Proposed Transaction").

2. On May 10, 2023, Livent, Allkem, and Arcadium Lithium plc ("NewCo") entered into a Transaction Agreement, which was subsequently joined by Lightning-A Merger Sub, Inc.

("Merger Sub") (as amended on August 2, 2023, and November 5, 2023, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Allkem and Livent will combine in a merger of equals transaction, with (i) each share of Livent common stock converting into the right to receive 2.406 NewCo shares that are expected to be listed on the New York Stock Exchange ("NYSE"); and (ii) each share of Allkem common stock converting into the right to receive (a) where the Allkem shareholder has not elected to receive ordinary shares, one NewCo CHESS Depositary Instrument (a "CDI") quoted on ASX, and (b) where the Allkem shareholder has elected to receive NewCo shares, one NewCo NYSE listed share for each Allkem ordinary share held, except for shareholders in certain ineligible jurisdictions, who will receive cash proceeds from the sale of the NewCo CDIs in lieu of such CDIs after closing. Upon closing of the Proposed Transaction, Livent's current stockholders will own approximately 44% of the combined company and Allkem's current stockholders will own approximately 56% of the combined company.

3. On November 20, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Livent stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Allkem, Livent and the combined company; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Gordon Dyal & Co. ("Gordon Dyal").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Livent stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Livent stockholders to vote on the Proposed Transaction is currently scheduled for December 19, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Livent's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Livent common stock.

10. Defendant Livent is a Delaware corporation, with its principal executive offices located at 1818 Market Street, Suite 2550, Philadelphia, Pennsylvania 19103. Livent's shares trade on the NYSE under the ticker symbol "LTHM."

11. Defendant Pierre R. Brondeau has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Robert C. Pallash has been a director of the Company at all relevant times.

13. Defendant G. Peter D'Aloia has been a director of the Company at all relevant times.

14. Defendant Christina Lampe-Önnerud has been a director of the Company at all relevant times.

15. Defendant Michael F. Barry has been a director of the Company at all relevant times.

16. Defendant Steven T. Merkt has been a director of the Company at all relevant times.

17. Defendant Pablo Marcet has been a director of the Company at all relevant times.

18. Defendant Andrea E. Utecht has been a director of the Company at all relevant times.

19. Defendant Paul W. Graves ("Graves") has been President, Chief Executive Officer ("CEO"), and a director of the Company at all relevant times.

20. Defendants identified in paragraphs 12-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Founded in 1940, Livent manufactures and sells performance lithium compounds primarily used in lithium-based batteries, specialty polymers and chemical synthesis applications in North America, Latin America, Europe, the Middle East, Africa, and the Asia Pacific. Livent

offers lithium compounds for use in applications that have specific performance requirements, including battery-grade lithium hydroxide for use in high performance lithium-ion batteries and butyllithium, which is used in the production of polymers and pharmaceutical products, as well as a range of specialty lithium compounds, including high purity lithium metal, which is used in non-rechargeable batteries and the production of lightweight materials for aerospace applications. The Company also provides lithium phosphate, pharmaceutical-grade lithium carbonate, high purity lithium chloride, and specialty organics, as well as lithium carbonate and lithium chloride for use as feedstock in the process of producing performance lithium compounds.

**The Proposed Transaction**

22.     On May 10, 2023, Livent announced that it had entered into the Proposed Transaction, stating, in relevant part:

> Allkem (ASX:AKE) and Livent (NYSE:LTHM) today announced the signing of a definitive agreement ("Transaction Agreement") to combine the two companies to create a leading global lithium chemicals producer ("NewCo"), (the "Transaction"). The Transaction is expected to close by the end of calendar year 2023, and upon closing of the all-stock merger of equals, Allkem shareholders will own approximately 56% and Livent shareholders will own approximately 44% of NewCo[ ].
>
> Allkem and Livent, two global lithium chemicals companies, will combine their highly complementary range of assets, growth projects, and operating skills across extraction and processing under a vertically integrated business model with the scale and expertise to meet the rapidly growing demand for lithium chemical products. The combined company will have a significant footprint of low-cost assets diversified across key geographies, products, and customers. Given the proximity of certain assets in Argentina and Canada, significant cost synergies and capex savings, in addition to other anticipated commercial synergies, are expected to be realized from the opportunity to co-develop and de-risk future expansion projects and operations.
>
> Livent is a global leader in lithium processing technologies with nearly eight decades of experience producing a diverse range of lithium chemicals for energy storage and other specialty applications. Allkem brings complementary expertise in conventional brine-based lithium extraction, hard rock mining, and lithium processing. With Livent's technical and commercial capabilities and its deep

customer relationships, and Allkem's large and diverse resource base and significant growth pipeline, NewCo will be well-positioned to capitalize on the expected growth in lithium demand from electric vehicles ("EVs") and energy storage solutions.

Livent's President and Chief Executive Officer, Paul Graves, said: "I am excited for what lies ahead as Livent and Allkem combine forces to help power the transition to EVs, cleaner energy and a more sustainable future. We look forward to playing an even bigger role in the acceleration of decarbonization policies by providing the lithium needed to enable this critical global energy shift. As a combined company, we will have the enhanced scale, product range, geographic coverage, and execution capabilities to meet our customers' rapidly growing demand for lithium chemicals. This transaction will capitalize on our highly complementary business models and our collective strengths, including our best-in-class technologies, assets, and people, to be a leading force in our industry driving growth in EV and energy storage applications. Together we can accelerate our growth plans and deliver more lithium, more reliably, and more quickly, than either of us can do alone. Jointly, we are committed to growing responsibly and supporting the communities where we operate, and we look forward to executing on our shared long-term vision."

Allkem's Chief Executive Officer, Martín Pérez de Solay, said: "The combination of Allkem and Livent is transformational with compelling strategic logic and marks a significant milestone in our efforts to grow the company. We are bringing together two highly complementary businesses to create a leading global lithium chemicals company, building on Allkem's demonstrated track record of integration. The vertically integrated NewCo will improve delivery of high-quality, value-added products to our diverse customer base and unlock material synergies. The combination brings together teams with strong expertise in project development, product innovation, and marketing, and sets us up for a faster and de-risked delivery of the next phase of our growth. I believe Allkem shareholders will realize significant benefits from the Transaction as the business transforms into a truly global player with listings in the US and Australia. We will maintain our joint commitment to safety, quality, and productivity and through increased scale we can also improve outcomes for our employees, customers, partners, and the communities in which we operate."

**Strategic Benefits of the Combination**

- **Creates a leading global lithium chemicals producer with enhanced business-critical scale and greater capacity to meet growing customer demand**
    - Large, high quality, low-cost asset footprint with one of the world's largest lithium deposit bases
    - Multiple lithium chemical manufacturing facilities able to deliver a broad range of lithium performance chemicals globally

- Increased economies of scale and resources through NewCo's geographically adjacent asset portfolios in Argentina and North America
- Leading Americas-based lithium platform with ability to serve growing regional demand amid customer focus on assured security of supply and more localized supply chains
- Positioned to be a leading battery-grade lithium supplier
- Large and growing global customer base across EV and energy storage value chains, with strong customer relationships from both companies
- **Highly complementary and vertically integrated business model**
    - Enables vertical integration across the lithium value chain with the broadest product offering
    - Highly scalable across both resource and production assets; expected to immediately enhance operational flexibility and reliability, resulting in lower cost and greater value capture
    - Complementary expertise in brine and hydroxide processing with proven ability to produce high-quality products that are sought after by leading battery manufacturers and EV OEMs
    - Expansion of R&D capabilities to develop innovative and sustainable products and processes
- **Greater capacity and execution expertise to accelerate growth**
    - Allows delivery of growth commitment faster and de-risks path to approximately 250ktpa LCE by CY'27E5
    - Significant pipeline of advanced growth projects to create value for all stakeholders
    - Complementary expertise in hard rock mining, conventional and DLE-based processes, and lithium carbonate and hydroxide production
- **Creating a global leader to capture the decarbonization opportunity through EV and battery storage solutions**
    - Sector-leading ESG policies with a shared commitment to grow responsibly and pursue best practices across environmental stewardship, sustainability, community development, and corporate governance
    - Participation in industry efforts to advance transparency, safety, responsible operations, rigorous supply chains, and community engagement and development

**Significant Financial Benefits**

The combination is expected to create substantial value for the shareholders of both companies through:

- **Value creation from the synergistic combination and close proximity of assets, with additional synergies expected beyond CY'27E**

7

- Estimated run-rate operating cost synergies of approximately US$125 million (pre-tax) per annum from SG&A, asset optimization, and logistics and procurement savings. A significant portion of the synergies are expected to be realized through removing duplicate costs, improvement of procurement, site management, transport, and logistics functions at Sal de Vida, Hombre Muerto, and Québec, and through closer integration of operations. The majority of the annual run-rate pre-tax operating cost synergies are expected to be realized within three years
- Further synergies are expected to be realized from the sharing of technological expertise, improved flexibility in product flows, plant optimization, and enhanced marketing efficiencies
- In addition to operating synergies, NewCo is expected to realize approximately US$200 million in one-time capital expenditure savings, driven by the consolidation of shared infrastructure, streamlining construction and procurement, and leveraging complementary engineering work at Hombre Muerto and Sal de Vida, as well as at a co-located spodumene to hydroxide facility processing materials from the Québec spodumene resources.
- **Transaction metrics**
    - Exchange ratio determined based on each Company's estimated relative contribution to risk-adjusted net asset value ("NAV") (pre-synergies)
    - Transaction is expected to be immediately accretive to both Livent's and Allkem's shareholders on a NAV per share basis, reflecting the material synergies expected to be realized from the Transaction (net of costs to achieve)
    - The transaction results in Allkem shareholders owning approximately 56% of NewCo compared to 53% implied by the volume weighted average share prices over a one-month period.[6]
- **Stronger financial profile positions the combined entity to deliver growth**
    - Strong balance sheet with combined liquidity of US$1.4 billion and limited indebtedness[7]
    - Positive cash flow generation provides the financial strength needed to accelerate the growth strategy
- **Greater liquidity for investors and more diversified shareholder base**
    - Greater liquidity for investors through a primary listing on the New York Stock Exchange ("NYSE") and a foreign exempt listing on the Australian Securities Exchange ("ASX") via CHESS Depository Interests ("CDIs")
    - Seeking US index inclusion on implied combined market capitalization and pro-rata CDI inclusion in the S&P / ASX 200 index

**Tax-free all-stock transaction**

- Share for share exchange transaction expected to be a tax-free transaction for shareholders

**Transaction Structure**

NewCo will have a primary listing on the NYSE and maintain a foreign exempt listing on the ASX (via the issue of CDIs to Allkem shareholders). Under the terms of the Transaction, existing Allkem shareholders will receive one NewCo ASX listed CDI (or be able to elect to receive one NewCo NYSE listed share instead of a CDI) for each Allkem ordinary share held, except for shareholders in certain ineligible jurisdictions, who will receive cash proceeds from the sale of the NewCo CDIs in lieu of such CDIs after closing. Under the Merger, Livent shareholders will receive 2.406 NewCo NYSE listed shares of common stock for each Livent share held. Following the Transaction, Allkem and Livent shareholders are expected to own approximately 56% and 44% of the combined company, respectively.

**Governance and Leadership**

The Transaction Agreement and the Transaction have been unanimously approved by the Board of Directors of each company, and in the case of Allkem, subject to the Independent Expert concluding, and continuing to conclude, that the Scheme is in the best interest of Allkem shareholders.

The combined company will benefit from proven and experienced business leaders at both the Board and executive levels, along with diverse, high-performing teams at NewCo's operating sites.

NewCo is to be incorporated in the Bailiwick of Jersey, with corporate headquarters to be in North America, with the exact location and company name to be announced at a later date, and corporate residency to be in Ireland.

Upon completion of the Transaction, Peter Coleman will become the Chairman of NewCo, Paul Graves will become the CEO of NewCo, and Gilberto Antoniazzi will become the CFO of NewCo. The NewCo Board will have 14 members, consisting of 7 directors designated by Allkem and 7 directors designated by Livent. The commercial, operational, and capital deployment teams will be comprised of representatives from both companies. Allkem CEO, Martín Pérez de Solay, will provide consulting services to NewCo to help facilitate a smooth integration process post transaction close.

**Closing Conditions, Other Key Terms and Timing**

Closing of the Transaction is subject to the satisfaction or waiver of customary closing conditions, including receipt of regulatory approvals, approval by both

Livent and Allkem shareholders, the Independent Expert concluding that the Scheme is in the best interest of Allkem shareholders and not changing, withdrawing, or qualifying that conclusion, tax opinion delivery, and Australian tax class ruling confirmation, and Australian Court approval.

Allkem and Livent shareholders do not need to take any action at this time. An explanatory statement and notice of meeting containing important information about the Scheme ("Scheme Booklet") will be dispatched to Allkem Shareholders and released on ASX in due course, likely in the second half of calendar year 2023. A proxy statement/prospectus containing important information about the Merger will be dispatched to Livent Shareholders and filed with the U.S. Securities and Exchange Commission ("SEC") in due course. Subject to the satisfaction or waiver of the conditions to closing, the Transaction is expected to close by the end of calendar year 2023.

The Transaction Agreement includes reciprocal exclusivity arrangements (including notification obligations) in favour of both parties, a matching right regime in favour of both parties and termination fees in favour of both parties. The exclusivity arrangements are subject to customary exceptions that enable the directors of Allkem and Livent to comply with their respective fiduciary and / or statutory duties.

The full terms of the Transaction, including the closing conditions, are set out in the Transaction Agreement, a copy of which is attached to this announcement.

**Advisors**

Gordon Dyal & Co., LLC. is acting as exclusive financial advisor and Davis Polk & Wardwell LLP and Allens are acting as legal counsel to Livent.

UBS Securities Australia Limited and Morgan Stanley & Co. LLC are acting as financial advisors and King & Wood Mallesons and Sidley Austin LLP are acting as legal counsel to Allkem.

**The Materially Incomplete and Misleading Proxy Statement**

23.     On November 20, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Livent stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Livent management's financial projections for Livent, Allkem and the combined

company; (ii) Gordon Dyal's financial analyses; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Livent, Allkem and the Combined Company*

24.     The Proxy Statement fails to disclose material information concerning Livent management's financial projections for Livent, Allkem, and the combined company.

25.     For example, with respect to Livent management's "Livent Forecasts," the Proxy Statement fails to disclose all line items underlying the Company's projected Adjusted EBITDA and Unlevered free cash flow.

26.     Similarly, with respect to Livent management's "Adjusted Allkem Forecasts," the Proxy Statement fails to disclose all line items underlying Allkem's projected Adjusted EBITDA and Unlevered free cash flow.

27.     Additionally, with respect to Livent management's "Combined Forecasts," the Proxy Statement fails to disclose all line items underlying the combined company's projected Adjusted EBITDA and Unlevered free cash flow.

28.     The Proxy Statement also fails to disclose a quantification of the respective assumptions underlying each of the "Livent Forecasts," "Adjusted Allkem Forecasts," and the "Combined Forecasts." *See* Proxy Statement at 111.

29.     In addition, according to the Proxy Statement, "[t]he Livent Forecasts were originally developed by Livent management beginning in the first quarter of 2022 in connection with the transaction, updated in the first quarter of 2023 and made available to Allkem in March 2023." *Id.* at 108. The Proxy Statement fails, however, to disclose a summary of the previous iterations of the Livent Forecasts, as well as any prior iterations of Livent management's projections for Allkem or the combined company.

11

30. With respect to the financial projections for Allkem, the Proxy Statement further fails to disclose a summary of the "single set of certain non-public unaudited prospective financial information relating to Allkem on a standalone basis provided by Allkem's management to Livent" (*id.* at 107) or a quantification of the adjustments Livent management made to Allkem management's projections for Allkem in order to arrive at Livent management's "Adjusted Allkem Forecasts." The Proxy Statement similarly fails to disclose a summary of any prior iterations of Allkem management's projections for Allkem, including but not limited to the projections Allkem provided to Livent on May 15, 2022, and the updated financial projections Allkem provided to Livent on March 13, 2023, and March 14, 2023.

31. Moreover, according to the Proxy Statement, in connection with the analysis underlying its fairness opinion, Gordon Dyal "reviewed certain estimates of lithium reserves and resources for Allkem prepared by its management and third-party engineering firms, as adjusted and extrapolated by the management of Livent (. . . the 'Allkem Resources Estimates')[.]" *Id.* at 102. Similarly, Gordon Dyal "reviewed certain estimates of lithium reserves and resources for Livent prepared by its management and third-party engineering firms (. . . together with the Allkem Resources Estimates, [referred to] as the 'Resources Estimates')[.]" *Id.* The Proxy Statement fails, however, to disclose a summary of the Resource Estimates as provided by Livent management and relied upon by Gordon Dyal.

*Material Misrepresentations and/or Omissions Concerning Gordon Dyal's Financial Analyses*

32. The Proxy Statement fails to disclose material information concerning Gordon Dyal's financial analyses.

33. With respect to Gordon Dyal's *Livent Standalone Net Asset Value Analysis*, the Proxy Statement fails to disclose a quantification of: (i) Livent's projected cash expenses,

12

depreciation and amortization, taxes, capital expenditures, working capital, contracted prepayments, and export duty rebates; (ii) the inputs and assumptions underlying the discount rates ranging from 10.500% to 11.750%; and (iii) Livent's net cash balance as of December 31, 2023.

34. With respect to Gordon Dyal's *Allkem Standalone Net Asset Value Analysis*, the Proxy Statement fails to disclose a quantification of: (i) Allkem's projected cash expenses, depreciation and amortization, taxes, capital expenditures, and working capital; (ii) the inputs and assumptions underlying the discount rates ranging from 9.250% to 10.500%; and (iii) Allkem's net cash balance as of December 31, 2023.

35. With respect to Gordon Dyal's *Pro Forma Combined Company Net Asset Value Analysis*, the Proxy Statement fails to disclose a quantification of the inputs and assumptions underlying the discount rates ranging from 9.750% to 11.125%.

36. In sum, the omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information" and "Opinion of Livent's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Livent will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Livent**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Livent is liable as the issuer of these statements.

39.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46.   The Individual Defendants acted as controlling persons of Livent within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Livent and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

49.   By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Livent, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 30, 2023               **LONG LAW, LLC**

                                       By:   */s/ Brian D. Long*
                                             Brian D. Long (#4347)
**OF COUNSEL:**                              3828 Kennett Pike, Suite 208
                                             Wilmington, DE 19807
**ACOCELLI LAW, PLLC**                       Telephone: (302) 729-9100
Richard A. Acocelli                          Email: BDLong@longlawde.com
33 Flying Point Road, Suite 131
Southampton, NY 11968                        *Attorneys for Plaintiff*
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com